UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JERRY BABCOCK,

                                        Plaintiff,

                                                            DECISION AND ORDER

                                                            02-CV-6540L

                        v.

JO ANNE B. BARNHART,

                                        Defendant.
_____

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination

of the Commissioner of Social Security ("the Commissioner") that Jerry Babcock ("plaintiff") is not

disabled under the Social Security Act, and therefore, is not entitled to Social Security Disability

Insurance ("SSDI") or Supplemental Security Income ("SSI") benefits.

Both the Commissioner and plaintiff have moved for judgment on the pleadings pursuant to

Fed. R. Civ. P. 12(c).  For the reasons discussed below, the Commissioner's motion is denied,

plaintiff's motion is granted in part, and the case is remanded for further administrative proceedings.

## PROCEDURAL BACKGROUND

Plaintiff was born on September 1, 1979.  He has a high school education and has worked at stocking and delivering auto parts.  (T. 11, 105).

Plaintiff was involved in an automobile accident on April 22, 2000.  He suffered a fractured femur, which required surgical repair.  (T. 42-43, 284).  He also suffered traumatic brain injury, with subsequent cognitive and psychological difficulties.  (T. 12-13, 179, 189-91).

Plaintiff applied for SSDI and SSI benefits on July 6, 2000, alleging that he had been disabled since April 22, 2000 due to the injuries that he sustained in the accident.  (T. 77).  These applications were denied initially (T. 55) and on reconsideration.  (T. 56).  Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on May 7, 2002.  (T. 23-54).  On May 30, 2002, the ALJ found that plaintiff was not disabled.  (T. 7-19).  The ALJ's decision became the final decision of the Commissioner on September 27, 2002, when the Appeals Council denied plaintiff's request for review.  (T. 4-6).  This action followed.

## DISCUSSION

### I.  Definition of Disability

Under the Social Security Act ("the Act"), a person is considered disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months ... ." 42 U.S.C. §§ 423(d)(1)(A);

1382c(a)(3)(A).  A physical or mental impairment (or combination of impairments) is disabling if

it is of such severity that a person "is not only unable to do his previous work but cannot, considering

his age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy ... ." *Id.* at §§ 423(d)(2)(A); 1382c(a)(3)(B).  To determine whether

a person is disabled within the meaning of the Act, the ALJ proceeds through a five-step sequential

evaluation.  *Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Tejada v. Apfel*, 167 F.3d 770,

774 (2d Cir. 1999).

> The Second Circuit has described the five-step process as follows:
>
> First, the Commissioner considers whether the claimant is currently engaged in substantial
> gainful activity.  Where the claimant is not, the Commissioner next considers whether the
> claimant has a "severe impairment" that significantly limits her physical or mental ability to
> do basic work activities.  If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has an impairment that is listed in
> 20 C.F.R. pt. 404, subpt. P, app. 1.  If the claimant has a listed impairment, the
> Commissioner will consider the claimant disabled without considering vocational factors
> such as age, education, and work experience; the Commissioner presumes that a claimant
> who is afflicted with a listed impairment is unable to perform substantial gainful activity.
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether,
> despite the claimant's severe impairment, she has the residual functional capacity to perform
> her past work.  Finally, if the claimant is unable to perform her past work, the burden then
> shifts to the Commissioner to determine whether there is other work which the claimant
> could perform.

*Tejada*, 167 F.3d at 774.


## II.  The ALJ's Decision

Applying the five-step disability evaluation, the ALJ first found that plaintiff had not engaged

in substantial activity since his alleged onset date, April 22, 2000.  At step two, the ALJ found that

plaintiff's injuries to his femur and brain caused impairments that were severe within the meaning of the regulations.  At step three, the ALJ concluded that plaintiff had no impairments that met or equaled any of the listed impairments set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ next determined that plaintiff retained the residual functional capacity ("RFC") to perform the exertional demands of sedentary work, *i.e.*, work which is generally performed while sitting and never requires lifting in excess of ten pounds.  He also found that plaintiff's capacity for sedentary work was "only slightly diminished" by his nonexertional impairments.  (T. 16).

The ALJ next found that plaintiff was incapable of performing any of his past relevant work. Using the Medical-Vocational Guidelines, or "grids," as a framework for decision-making, the ALJ concluded at step five that plaintiff retained the RFC to perform a significant number of jobs that exist in the national economy, and that plaintiff was therefore not under a "disability" as defined by the Social Security Act.  (T. 11-17).

## III.  Standard of Review

The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and the ALJ applied the correct legal standards.  42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  Substantial evidence is defined as "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Thus, "[i]t is not the function of

a reviewing court to decide *de novo* whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force[,]" this Court cannot substitute its own judgment for that of the Commissioner. *Veino*, 312 F.3d at 586.

 Such a deferential standard, however, is not applied to the Commissioner's conclusions of law. *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984); *accord Tejada*, 167 F.3d at 773. This Court must independently determine if the Commissioner's decision applied the correct legal standards in determining that the plaintiff was not disabled. "Failure to apply the correct legal standards is grounds for reversal." *Townley*, 748 F.2d at 112. Therefore, this Court is to first review the legal standards applied, and then, if the standards were correctly applied, consider the substantiality of the evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987); *see also Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) ("'Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.'") (quoting *Johnson*, 817 F.2d at 986).

Here, the Commissioner argues that substantial evidence in the record exists to support the ALJ's determination that plaintiff is not disabled. Plaintiff contends that the ALJ's decision is based on legal error and is not supported by substantial evidence. Specifically, plaintiff claims that the ALJ failed to properly assess plaintiff's RFC, that he erred by not using the services of a vocational expert, and that he failed to properly assess plaintiff's credibility.

- 5 -

## IV. Residual Functional Capacity

## A. Exertional Impairments

The Commissioner bears the burden at the fifth step of establishing that, given the applicant's residual functional capacity, age, education, and work experience, there are a significant number of jobs available in the national economy which the applicant can perform.  20 C.F.R. § 404.1560(c); *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005); *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004).  "In the ordinary case, the Commissioner meets his burden at the fifth step by resorting to the applicable medical vocational guidelines (grids)."  *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999) (internal quotation marks and citations omitted).  However, "exclusive reliance on the grids is inappropriate where the guidelines fail to describe the full extent of a claimant's physical limitations."  *Id.*

> In particular, "sole reliance on the [g]rid[s] may be precluded where the claimant's exertional impairments are compounded by significant nonexertional impairments that limit the range of sedentary work that the claimant can perform."  In these circumstances, the Commissioner must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform."

*Id.* (quoting *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986)).

In the case at bar, the ALJ found that plaintiff "retained the residual functional capacity to perform the exertional demands of sedentary work," (T. 16), and that given plaintiff's age and other vocational factors, there were jobs, existing in significant numbers in the national economy, that plaintiff was able to perform.  *See* 20 C.F.R. § 404.1567(a) (defining sedentary work), and pt. 404, subpt. P, app. 2, table 1, rule 201.27 (applicable grid).  In support of that conclusion, the ALJ relied on: the reports of Dr. John Orsini, a neurologist at St. Mary's Comprehensive Rehabilitation Center,

who treated plaintiff in the summer of 2000 (T. 244-51, 307-08); the reports of Dr. David R. Graham of Elmira Orthopaedic Associates, P.C., who also treated plaintiff during that time (T. 235-38); and the conclusions of the state agency review physician (T. 274-81).  (T. 16).

When he saw plaintiff on August 14, 2000, Dr. Orsini reported, plaintiff was "doing well. He walks with a non-antalgic gait.  Stands with normal posture.  Sits with normal station."[1] (T. 245). He stated that plaintiff "report[ed] ongoing pain in his leg and difficulty with standing for a prolonged time," and that Dr. Orsini expected "ongoing difficulties with prolonged standing or walking ... ."  *Id.*  He therefore "recommended that Jerry receive VESID [*i.e.*, Office of Vocational and Educational Services for Individuals with Disabilities] training as his prior work in a factory required prolonged standing and walking, which Mr. Babcock may not be able to tolerate at any time in the future."  *Id.*  Similarly, in his August 21, 2000 report, Dr. Orsini opined that "[b]ecause of injuries received, Mr. Babcock will have difficulty returning to his previous work duties which require prolonged standing and frequent bending at the knees, and therefore will require retraining to return to the work force."  (T. 244).

Dr. Orsini saw plaintiff in a follow-up visit on September 14, 2000.  He stated that plaintiff "reported that he tried to return to work at his previous job but was unable to maintain focus and concentration for eight hours a day and that his legs would swell up."  (T. 307).  Dr. Orsini said that plaintiff "ambulates with a normal gait, stands with a station and sits with normal posture."  *Id.*  He

---

[1]An "antalgic gait" is "a characteristic gait resulting from pain on weightbearing in which the stance phase of gait is shortened on the affected side."  Stedman's Medical Dictionary, (27th ed. 2000) (Westlaw).

added that plaintiff was "undergoing traning for sedentary-type work and hopefully, after December, he will be able to work." *Id.*

In his August 3, 2000 report, Dr. Graham stated that plaintiff's "fractured right femur continues to do well with no pain." (T. 237). He added that plaintiff "wonder[ed] about VESID to try to get back into the work force and it is apparent that his biggest problem right now is that he has not fully recovered his mental function following his severe head injury." *Id.* On September 30, 2000, Dr. Graham gave the following report of his examination of plaintiff on September 28:

> He has minimal residual symptoms except for some residual muscle weakness and aching in his knee which he had before. He says his knee is getting better and we did have an MRI which showed no real abnormalities in his knee. X-rays of his femur show his fracture solidly healed in anatomic position and alignment.

(T. 238).

The state agency review physician, Dr. Verna Yu, found that plaintiff could physically perform light work: she concluded from her review of plaintiff's file that plaintiff could: occasionally lift or carry up to twenty pounds; frequently lift or carry up to ten pounds; and stand or walk about six hours during an eight-hour workday. (T. 275). *See* 20 C.F.R. § 404.1567(b) (defining "light work"). Although the ALJ did not fully accept Dr. Yu's conclusions in that regard, Dr. Yu's conclusion that plaintiff was capable of performing light work necessarily encompassed the ALJ's conclusion that plaintiff could perform sedentary work. *See id.* ("If someone can do light work, we determine that he or she can also do sedentary work," with some exceptions).

Plaintiff's Revised Service Plan ("Plan") from Happiness House stated that a local vocational agency had placed plaintiff "in a work assessment in a factory setting," but that plaintiff "was not successful in this work site" because he "was unable to stand for long periods of time."

The Plan stated that although "[a]ccommodations were made for [plaintiff, he] did not want to return.  He stated that the work was 'beneath' him and that he did not like that type of work."  (T. 313).[2]  The Plan also stated that plaintiff was taking a class in computer maintenance and repair, and that upon completion of that course, he would "have an A+ Certification which is very marketable in the computer world."  (T. 314).

Contrary to plaintiff's view, I do not believe that the ALJ erred in his analysis of plaintiff's exertional impairments, and I find that the ALJ's decision in that regard is supported by substantial evidence.  First, although plaintiff is correct that neither Dr. Orsini nor Dr. Graham ever expressly gave an opinion on whether plaintiff was able to work, their observations and findings generally support the ALJ's conclusion that plaintiff was physically capable of performing sedentary work.  For instance, although Dr. Orsini noted that plaintiff would have "difficulty returning to his *previous* work duties which require prolonged *standing* and frequent *bending* at the knees," he nonetheless envisioned plaintiff being able "to return to the work force" after some "retraining."  (T. 244) (emphasis added).  That view was echoed in Dr. Orsini's September 2000 report, in which he stated that plaintiff was "undergoing traning for sedentary-type work and hopefully, after December, he will be able to work."  (T. 307).  Dr. Orsini also stated in August 2000 that generally plaintiff was "doing well," and most of plaintiff's physical problems referred to by Dr. Orsini involved difficulties with prolonged standing or walking.  (T. 245).

---

[2]At his hearing before the ALJ, plaintiff admitted having said that this job was "beneath him," and that he had in fact felt that way at the time, but he contended that "that is not why [he] left that job."  (T. 29).  He stated that he left "[m]ainly because [he] couldn't lift, ... couldn't do what they needed [him] to do."  (T. 41).

Dr. Graham also indicated that in general, plaintiff was doing well physically, aside from "minimal residual symptoms" and "some residual muscle weakness and aching in his knee," which was "getting better" and appeared from an MRI to have "no real abnormalities ... ." (T. 238). Dr. Graham noted that plaintiff had expressed an interest in VESID training "to try to get back into the work force," and though Dr. Graham did not give an opinion about plaintiff's ability to work, he certainly expressed no skepticism about the possibility of that occurring.

The state agency review physician's findings also support the ALJ's determination. Initially, I note that "the ALJ's reliance on this RFC assessment was not improper. 'State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such their opinions may constitute substantial evidence if they are consistent with the record as a whole.'" *Lewis v. Commissioner*, No. 00-CV-1225, 2005 WL 1899399, at *3 (N.D.N.Y. Aug. 2, 2005) (quoting *Leach ex rel. Murray v. Bamhart*, No. 02 Civ. 3561, 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004)); *see Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983)); *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996), *cert. denied*, 519 U.S. 1113 (1997); *Rivera v. Barnhart*, No. 04-CV-6149, 2005 WL 3555501, at *8 (noting case authority that "supports the ... position that the ALJ could find ... a State agency physician's opinion to constitute substantial evidence") (citing *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993)); SSR 96-6p, 1996 WL 374180 (S.S.A. July 2, 1996).

I recognize that the review physician's findings must themselves be based on evidence in the record. *Schisler*, 3 F.3d at 568; SSR 96-6p, 1996 WL 374180, at *2; 20 C.F.R. § 404.1527(d)(3). Here, though, Dr. Yu indicated that her conclusions were based on the evidence indicating that

plaintiff's femur fracture had healed, that plaintiff had only residual symptoms consisting mainly of muscle weakness around his knee, and that plaintiff exhibited a good range of motion.  (T. 275).

Although plaintiff notes that Dr. Yu did not complete the section of the report form concerning her evaluation of plaintiff's symptoms, the form instructs the physician to complete that section "[f]or symptoms alleged by the claimant to produce physical limitations," only to the extent that certain aspects of those symptoms (such as whether they are attributable to a medically determinable impairment, and whether their severity is consistent with, or disproportionate to, the other medical and nonmedical evidence) have not already been addressed elsewhere in the report. (T. 279).   In this case, however, plaintiff's claimed symptoms were largely the same as those described by his treating physicians in the reports relied upon by the review physician, such as some pain and stiffness in the knee, especially after prolonged periods of standing.  *See*, *e.g.*, T. 85 (plaintiff's statement on his application for benefits that his injuries limited his ability to work because he "cannot stand for long peroids [sic] of time" and "cannot twist, turn, or move in a quick fashon [sic]."  Plaintiff has not identified any other symptoms that were ignored or dismissed by the review physician.

## B. Nonexertional Impairments

The ALJ also found that plaintiff had mental impairments that made it difficult for him to concentrate on and attend to work tasks.  He concluded, however, that plaintiff's "capacity for sedentary work is only slightly diminished by his nonexertional limitations," and that those limitations "pose only a mild limitation on claimant's ability to perform substantial gainful activity."

(T. 16).  In support of that conclusion, the ALJ cited:  the November 2000 report of Dr. Kathleen

Lewandowski, who conducted an evaluation of plaintiff for VESID (T. 298-304); plaintiff's Revised

Service Plan from Happiness House, a nonprofit health and human services agency (T. 311-33); and

the state agency review physician's conclusions (T. 260-73).

Plaintiff contends that the ALJ's findings in this regard are not supported by the evidence.

According to plaintiff, the evidence in fact demonstrates that he suffers from severe nonexertional

limitations.

After reviewing the record, I conclude that the ALJ did not properly assess plaintiff's RFC

in light of his nonexertional limitations.  Specifically, the ALJ did not explain whether or how he

considered certain medical source opinions in the record concerning the extent and severity of

plaintiff's nonexertional limitations, and their effect on his ability to perform the full range of

sedentary work.

A review of the evidence cited by the ALJ as supporting his findings reveals that it is some

respects inconsistent with the ALJ's statement that plaintiff's nonexertional limtitations were only

"mild."  For example, although Dr. Lewandowski stated that plaintiff was of average intelligence,

and that his skills in some areas were also normal (or even, in the case of "visual-spatial tasks which

... provide him with all the needed information[,] were superior," (T. 303)), she also noted a range

of problems, including:  "impaired attention"; "impaired executive skills of initiation, response

maintenance, organization and inhibition"; "limited" abstract reasoning; difficulty solving problems

requiring the use of deductive reasoning; "difficulty coping with dissatisfaction"; and a "tend[ency]

to respond impulsively."  (T. 303).

Dr. Lewandowski did state that certain steps that should be taken to help plaintiff deal with these difficulties, but she did not opine that these steps would necessarily allow plaintiff to function effectively in a work setting.  For example, she stated that plaintiff "will need help counteracting his poor impulse control if he is to maintain consistent work behavior."  (T. 304).  She added that plaintiff "*may* do well working with his hands to fix or assemble items, providing that there are few competing distractions and the work environment is very well organized," and that "[h]e is likely to benefit from use of diagrams or charts to guide his behavior," *id.* (emphasis added), but she certainly did not opine that he *would* do well.  Rather, Dr. Lewandowski's opinion that plaintiff might be able to perform certain types of work was qualified by certain preconditions concerning his work environment, which suggests more than mild or insignificant nonexertional limitations.

The ALJ also referenced, and briefly summarized, the report of Joel H. Schorr, Ed.D., a psychologist who performed a consultative evaluation of plaintiff on November 17, 2000, at the request of the New York State Department of Temporary and Disability Assistance, Division of Disability Determinations.  The ALJ did not state what weight, if any, he gave to Dr. Schorr's findings, however, nor, if he rejected Dr. Schorr's opinion, did he explain why.

Dr. Schorr stated, *inter alia*, that plaintiff "may have difficulty in this examiner's opinion dealing with the stress of a normal work situation due to his somewhat 'hypertendoncies.' [sic] Maintenance and focus of concentration on his job at hand may also be a difficulty for him with regard to continued employment."  (T. 242).  He diagnosed plaintiff as suffering from "[a]ttention deficit disorder with hyperactivity," "[a]djustment disorder with mixed disturbance of emotions and conduct," and "[p]ost traumatic stress disorder, with accompanying anxiety ... ."  *Id.*  He concluded

that "this claimant is only mildly to moderately capable of providing consistent work pattern in the normal work place on a regular basis due [to] his attention deficit and distractibility tendencies." *Id.* Dr. Schorr added that plaintiff's "prognosis is fair given possibility of the above recommendations [for treatment]," and that "claimant is not currently capable of handling funds on his own behalf ... ." (T. 243).

As stated, the ALJ referenced some of these findings, but otherwise did not discuss them at all. This was error.

The regulations inform claimants that "we will evaluate every medical opinion we receive," and that "[g]enerally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(d). Here, it is not clear if the ALJ gave *any* weight to Dr. Schorr's opinions; he did not state whether he did so, and the ALJ's own conclusions about plaintiff's RFC seem to contradict those of Dr. Schorr, particularly Dr. Schorr's opinions that plaintiff was "only mildly to moderately capable of providing consistent work pattern in the normal work place on a regular basis" and that plaintiff's prognosis was only "fair."

The regulations also state that "[g]enerally, we give more weight to opinions from your treating sources ...," and that "[w]hen we do not give the treating source's opinion controlling weight, we apply [certain enumerated factors] in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. § 404.1527(d)(2).

Here, it appears that there was no "treating" medical source with respect to plaintiff's nonexertional impairments. *See* 20 C.F.R. § 404.1502 (defining "treating source" as "your own

physician, psychologist, or other acceptable medical source who provides you, or has provided you,

with medical treatment or evaluation and who has, or has had, an *ongoing treatment relationship*

with you") (emphasis added).  Dr. Orsini, a neurologist, did treat plaintiff, but his opinions mostly

related to plaintiff's physical impairments.  His reports occasionally contain references to plaintiff's

mental state–mostly concerning difficulties that plaintiff was experiencing (*e.g.*, "ongoing attention,

concentration difficulties and disinhibition most noted with temper" (T. 245); "Decreased higher

level attention and memory related to cognitive impairment" (T. 250)), but in general they are

concerned with the lingering effects of plaintiff's fractured femur.  Aside from some changes in his

medications, *see*, *e.g.*, T. 160, it also does not appear that Dr. Orsini prescribed any course of

treatment for plaintiff's mental or psychological difficulties.

Dr. Graham, an orthopedist, also stated on August 3, 2000 that plaintiff's "biggest problem

right now is that he has not fully recovered his mental function following his severe head injury."

(T. 237).  He offered no opinion about the severity or effects of that impairment, though, which in

any event lies outside his area of specialization.  *See* 20 C.F.R. § 404.1527(d)(5) ("We generally give

more weight to the opinion of a specialist about medical issues related to his or her area of specialty

than to the opinion of a source who is not a specialist").  As with Dr. Orsini, Dr. Graham does not

appeared to have prescribed any treatment relating to plaintiff's mental function.

In the absence of a treating source's opinion, there was all the more reason for the ALJ to

discuss the opinions of the examining psychologist, Dr. Schorr.  His failure to do so constitutes legal

error requiring reversal.  *See Torregrosa v. Barnhart*, No. CV-03-5275, 2004 WL 1905371, at *6

(E.D.N.Y. Aug. 27, 2004) (reversing and remanding based in part on ALJ's failure to explain why he gave relatively little weight to opinion of examining physician).

The ALJ similarly erred in failing to explain what weight, if any, he gave to the findings of the state agency review psychologist, Michael Moses, Ph.D. Of the twenty areas in which Dr. Moses was asked to make a finding concerning plaintiff's mental RFC, he found plaintiff to be "moderately limited" in nine areas, including the ability to:  understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms; and perform at a consistent pace without an unreasonable number and length of rest periods. (T. 256-57). The ALJ failed to explain how these findings supported his determination that plaintiff's "capacity for sedentary work is only *slightly* diminished by his nonexertional limitations." (T. 16).

The ALJ also stated that his findings concerning plaintiff's nonexertional limitations were supported, in part, by the conclusions of the state agency medical consultant, (T. 17), Dr. Moses. Nowhere, however, did the ALJ actually discuss those conclusions, which certainly do not provide obvious support for his own. A bare citation of the review psychologist's report, then, is not enough. *See* SSR 96-6P, 1996 WL 374180, at *2 (ALJs "are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions"); 20 C.F.R.§1527(f)(2)(i)

("administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence").[3]

## V. Remand

Under 42 U.S.C. § 405(g), the court has the authority to affirm, reverse, or modify a final decision of the Commissioner, with or without remand. *See Butts*, 388 F.3d at 385. "Where there are gaps in the administrative record," a remand for further development of the evidence is appropriate. *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999) (citation omitted). Reversal and entry of judgment for the claimant is appropriate only "when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *see also Rosa*, 168 F.3d at 83 (remand solely for calculation of benefits is appropriate where there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision").

Remand is especially appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996). In particular, "a remand is proper where the error is found in an ALJ's failure to apply correctly the distinction

---

[3]Although Dr. Moses did find that plaintiff was not significantly limited in some respects, such as his ability to understand and remember very short and simple instructions (T. 256), even a recitation of those aspects of Dr. Moses's findings would not in itself support the ALJ's determination, absent some explanation of the weight given to Dr. Moses's findings of moderate limitations in other areas. *See La Patra v. Barnhart*, 402 F.Supp.2d 429, 432 (W.D.N.Y. 2005) ("in formulating plaintiff's residual functional capacity, the ALJ seems to have relied on only portions of the opinion of the State Agency review physician, Dr. M. Apacible. No explanation is given for the selective use of the limitations Dr. Apacible found regarding plaintiff's non-exertional abilities").

- 17 -

between cases where reliance on the grid suffices and those where the testimony of a vocational expert is essential to a denial of benefits." *Butts*, 388 F.3d at 387 (citing *Rosa*, 168 F.3d at 78).

I therefore conclude that remand for further proceedings is the proper remedy here. "[O]n remand, the ALJ must conduct a re-evaluation as to whether the Commissioner has demonstrated that [plaintiff's] ability to perform the full range of [sedentary] work was not significantly diminished by his nonexertional impairments." *Pratts*, 94 F.3d at 39. In doing so, the ALJ should explain what weight, if any, he gives to the various medical opinions in the record concerning plaintiff's nonexertional impairments, and, if the ALJ rejects any of those opinions in whole or in part, his reasons for doing so. "If the ALJ finds that [plaintiff's] ability is significantly diminished, then the Commissioner should be required to present the testimony of a vocational expert or other evidence concerning the existence of jobs in the national economy for an individual with [plaintiff's] limitations." *Id. See Butts*, 388 F.3d at 384 (where claimant had both exertional and nonexertional limitations, "the ALJ should have called a vocational expert in step five but did not"); *Rosa*, 168 F.3d at 78 ("'[W]here the claimant's exertional impairments are compounded by significant nonexertional impairments that limit the range of sedentary work that the claimant can perform,' ... the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform'") (quoting *Bapp*, 802 F.2d at 603).

In *Butts*, the Court of Appeals also stated that "in cases involving an ALJ's failure to call a vocational expert, district courts that select remand as a remedy should consider imposing a time limit on the subsequent proceedings." 388 F.3d at 387 (instructing district court to direct that further

- 18 -

proceedings before an ALJ be completed within 60 days of the issuance of the district court's order and that, if the ALJ's decision were a denial of benefits, a final decision of the Commissioner be rendered within 60 days of plaintiff's appeal from the ALJ's decision); *see also Rivera v. Barnhart*, 379 F.Supp.2d 599, 609 (S.D.N.Y. 2005) (ordering Commissioner to complete administrative proceedings and issue a final determination within 120 days of the date of court's order, and to report to court within 90 days on status of plaintiff's claim).[4]

## CONCLUSION

Plaintiff's motion for judgment on the pleadings (Dkt. #5) is granted in part, and the Commissioner's motion (Dkt. #10) is denied.  The case is remanded for further administrative proceedings consistent with this Decision and Order, pursuant to sentence four, 42 U.S.C. § 405(g).

Proceedings before the ALJ should be completed within seventy-five (75) days of entry of this Decision and Order and any appeal decided within seventy-five (75) days of the appealed-from ALJ decision.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       February 6, 2006.

_____

[4]My finding that the case should be remanded for further proceedings renders it unnecessary for the Court to address plaintiff's contention that the ALJ erred in assessing plaintiff's credibility.  *See Martinez v. Massanari*, 242 F.Supp.2d 372, 380 (S.D.N.Y. 2003); *Thornton v. Shalala*, 880 F.Supp. 995, 1004 (W.D.N.Y. 1994).